UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

YAZMIN G. CARDO CRUZ,

    Plaintiff,

v.

PREMIUM CARS OF MIAMI, LLC,

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Yazmin G. Cardo Cruz ("Cardo Cruz"), by and through her undersigned attorney, hereby files this Complaint against Defendant, Premium Cars of Miami, LLC, ("Premium Cars"), and alleges as follows:

**INTRODUCTION**

1. This action arises from the sale of a 2014 Ford 2-door (coupe) Mustang (VIN No. 1ZVBP8AM5E5203204) (the "Vehicle") involving the parties. In turn, due to the illicit and fraudulent actions of Premium Cars, Cardo Cruz has been injured.

**PARTIES, JURISDICTION AND VENUE**

2. Cardo Cruz is, and at times material to this action, a resident of Broward and Collier Counties, Florida. Cardo Cruz also used, and continues to use, the Vehicle to drive to and from her place of employment, which is located in Broward County, Florida. Cardo Cruz also is a "transferee" as defined under 49 C.F.R. § 580.3.

3. Premium Cars was, and is, a Florida limited liability company, with its place of business in Miami, Miami-Dade County, Florida. Premium Cars is a car dealership and sells used

1

cars at the retail level. Premium Cars was, and is, a "dealer" as defined under 49 U.S.C. § 32702(2) and a "transferor" as defined under 49 C.F.R. § 590.3.

4. This is an action authorized and instituted pursuant to: the Federal Motor Vehicle Information and Cost Savings Act (otherwise known as the Federal Odometer Act) (49 U.S.C. § 32701, *et seq.*); Florida's Deceptive and Unfair Trade Practices Act (Florida Statutes § 501.211, *et seq.*); and the common law of the State of Florida.

5. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1337 to redress the various violations of federal law committed by Premium Cars. The Court also may exercise pendant jurisdiction over Cardo Cruz's state law claims arising under the common law and statutes of the State of Florida, and which arise from a nucleus of operative facts, pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. § 1391(b)(2) and (c), wherein: (a) Cardo Cruz resides (part-time) and works; (b) the transaction involving the Vehicle occurred; (c) Premium Cars regularly conducts business and is involved in contractual relationships; and (d) a substantial amount of the events that give rise to the claims in this lawsuit occurred.

## **GENERAL ALLEGATIONS**

7. In mid-April 2016, Cardo Cruz decided to purchase an automobile for her personal use. Cardo Cruz needed a car for reliable transportation to and from work; for shopping; and other personal uses.

8. She subsequently observed an online ad from Premium Cars for the Vehicle. See Exhibit A. The ad claimed the Vehicle's odometer read 44,785 miles. See Exhibit A. The ad also listed a purchase price of $15,500 for the Vehicle. See Exhibit A.

9. On April 18, 2016, Cardo Cruz and her mother, Dunia Cardo, traveled to Premium Cars to view the Vehicle in the ad with the intent to purchase the automobile. During her visit, Cardo Cruz was assisted by Reynaldo Brito ("Brito"), Premium Cars manager, and a male salesperson (the "Salesperson"). Brito and the Salesperson only talked in the Spanish language with Cardo Cruz and her mother. Brito informed Cardo Cruz that the price for the Vehicle was $15,000. Cardo Cruz informed Brito that she did not have $15,000 in cash. Brito explained that he could secure financing for Cardo Cruz and estimated the monthly payments would be approximately $422. Brito also suggested that Cardo Cruz could re-finance the deal later.

10. On April 20, 2016, Cardo Cruz and her then boyfriend, Zachary Moser, visited Premium Cars to complete the transaction. Moser accompanied Cardo Cruz to advise her during the purchase. Despite requests from Moser (who only speaks the English language), Brito and the Salesperson communicated only with Cardo Cruz and in the Spanish language.

11. Based on the representations and the non-disclosures of Premium Cars, Cardo Cruz agreed to purchase the Vehicle. The transaction was memorialized in a Retail Purchase Agreement, which was printed in the English language. See Exhibit B. Cardo Cruz executed the Retail Purchase Agreement. Brito or the Salesperson did not provide a copy of the Retail Purchase Agreement to Cardo Cruz. Brito informed Cardo Cruz that a copy of the Retail Purchase Agreement would be provided later by United Auto Credit Corporation ("United Auto").

12. During the transaction, Brito and the Salesperson did not explain or notify Cardo Cruz about the arbitration provisions in the Retail Purchase Agreement or the Retail Installment Sale Contract.

13. Cardo Cruz purchased the Vehicle for the "cash price" of $19,023.95 and provided Brito with an initial down payment of $1,000 (Cardo Cruz charged $500 each on two credit cards). See Exhibit C.

14. The Retail Purchase Agreement claimed the Vehicle's odometer read 44,785 miles. See Exhibit B.

15. Cardo Cruz also was presented with, and executed, a Retail Installment Sale Contract from United Auto to finance the purchase of the Vehicle. See Exhibit D.

16. The Retail Purchase Agreement did not include a fee for a tag. See Exhibit B. Brito did not explain that Premium Cards would not supply the tag for the Vehicle. Cardo Cruz drove the Vehicle off the lot with a temporary (paper) tag with Florida Tag No. GDCD01.

17. On April 25, 2016, Cardo Cruz provided Premium Cars with a second down payment of $1,000 (Cardo Cruz paid $990 in cash and charged $10 on a credit card). See Exhibit C.

18. On April 29, 2016, Cardo Cruz received correspondence and a payment invoice for United Auto relating to the Retail Installment Sale Contract. See Exhibit E.

19. On May 2, 2016, Cardo Cruz provided Premium Cars with the final down payment of $1,000 (Cardo Cruz charged the amount on a credit card). See Exhibit C.

20. On May 3, 2016, Premium Cars secured from Aventura Auto Tag Agency a transfer title and a permanent tag (Florida Tag No. GDCD01). See Exhibit F. The permanent tag had the same plate number as the temporary tag (Florida Tag No. GDCD01) on the Vehicle. See Exhibit F. The permanent tag ordered by Premium Cars was registered under Cardo Cruz's name. See Exhibit F. Premium Cars did not inform, or send the permanent tag to, Cardo Cruz.

21. In early May 2016, Cardo Cruz received a copy of the Retail Purchase Agreement from Premium Cars. See Exhibit B.

22. On May 4, 2016, Cardo Cruz noticed the odometer reading on the Vehicle was 44,174 miles. See Exhibit G.

23. On May 12, 2016, Cardo Cruz asked for the permanent tag from Premium Cars. However, Brito said the dealership did not include the tag fee in the sale agreement and, thus, did not possess the permanent tag.

24. On May 18 or 19, 2016, Cardo Cruz obtained a permanent tag (Florida Tag No. GSTX70) for the Vehicle from Broward Tag and Title.

25. On April 11, 2017, Cardo Cruz secured new financing for the Vehicle from Suncoast Credit Union.

26. On September 8, 2017, an unknown person driving a gray 4-door Mazda with Florida Tag No. GDCD01 received two traffic citations. See Exhibit H. The traffic citations were placed on Cardo Cruz's record despite her not driving or owing the vehicle at issue. See Exhibit H. Cardo Cruz was subsequently provided notice of the infractions.

27. On July 8, 2016, Premium Cars provided Cardo Cruz with a copy of the permanent tag (Florida Tag No. GDCD01) and receipt that was ordered by the dealership. See Exhibit F.

28. On September 6, 2016, Cardo Cruz was obligated to replace the tires on the Vehicle despite statements from Premium Cars at the time of the sale that the tires were in good condition. Instead, Cardo Cruz was informed by professionals that the tires on the Vehicle had to be replaced due to "tread wear" and "dry rot." See Exhibit I.

29. If Cardo Cruz had become aware of the illicit activities of Premium Cars, she would not have agreed to purchase, and finance the purchase price for, the Vehicle.

## COUNT I
## FEDERAL MOTOR VEHICLE INFORMATION AND COST SAVINGS ACT

30. Cardo Cruz re-alleges each and every allegation contained in paragraphs 1-29, as if they were fully set forth herein.

31. This is an action for violation of the Federal Motor Vehicle Information and Cost Savings Act (for purposes of this Complaint, referred to as the "Federal Odometer Act") (49 U.S.C. § 32701, *et seq.*), exclusive of interest, costs and attorneys' fees.

32. At all times material hereto, Cardo Cruz was a "transferee" as defined under 49 C.F.R. § 580.3.

33. Further, at all times material hereto, Premium Cars was a "dealer" as defined under 49 U.S.C. § 32702(2) and a "transferor" as defined under 49 C.F.R. § 590.3.

34. In addition, at all times material hereto, the Vehicle was a "moto vehicle" as defined under 49 U.S.C. § 32702(2).

35. Premium Cars failed to provide Cardo Cruz with the actual title certificate, for her examination and signature, as required by 49 U.S.C. § 32705 and 49 C.F.R. § 590.5.

36. By not producing the actual title certificate, Premium Cars was able to hide from Cardo Cruz the facts related to the prior ownership of the Vehicle, including the accurate odometer reading for the Vehicle and prior use of the automobile.

37. Instead of complying with the requirements of the Federal Odometer Act, Premium Cars required Cardo Cruz to sign a power of attorney or other transfer form that enabled the dealership to affix the name of Cardo Cruz to the title certificate.

38. This tactic was designed in part of prevent Cardo Cruz from seeing the Vehicle's title, prior owner of the Vehicle and the accurate odometer reading.

39. The power of attorney or transfer form was not the secure form used by the State of Florida and did not contain the disclosures required by the Federal Odometer Act.

40. Premium Cars deliberately deceived Cardo Cruz through oral and written misrepresentations and non-disclosures.

41. Premium Cars, as a transferor, violated the Federal Odometer Act by making a false statement to a transferee in violation of 49 U.S.C. § 32705(a) and 49 C.F.R. § 590.4.

42. Premium Cars violated the Federal Odometer Act with the intent to defraud.

43. As a direct and proximate result of the violations of the Federal Odometer Act, Premium Cars is liable to Cardo Cruz in the sum as specified by federal law.

44. Cardo Cruz has retained the undersigned attorney to represent her interest in this matter and is obligated to pay said counsel a reasonable free for his services.

45. Cardo Cruz is entitled, pursuant to 49 U.S.C. § 32710(b), to recover her reasonable attorneys' fees and court costs upon entry of judgment in her favor.

## COUNT II
## FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

46. Cardo Cruz re-alleges each and every allegation contained in paragraphs 1-29, as if they were fully set forth herein.

47. This is an action for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Florida Statutes § 501.211, *et seq.*).

48. FDUTPA provides that "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

49. At all times material hereto, Cardo Cruz was an "interested party or person" as said term is defined under Florida Statutes § 501.203(6).

50. At all times material hereto, the Vehicle was a "motor vehicle" and an "used motor vehicle" as said terms are defined under Florida Statutes §§ 320.01(1) and 319.001(11), respectfully.

51. By virtue of the acts described above, Premium Cars was engaged in "trade or commerce" as said term is defined under Florida Statutes § 501.203(8).

52. During the course of the sale and financing of the Vehicle, Premium Cars violated the requirements of Florida Statutes Chapter 320 (Florida Motor Vehicle Licenses Act) in the following respects:

    a. By misrepresenting or make false, deceptive or misleading statements regarding the sale of the Vehicle in violation of Florida Statutes Section 320.27(b)3;

    b. By misrepresenting or make false, deceptive or misleading statements regarding the condition of the tires on the Vehicle, which due to "tread wear" and "dry rot", had to be replaced by Cardo Cruz on September 6, 2016;

    c. By performing a "bait and switch" by advertising a purchase price of $15,500, but selling the Vehicle for $19,023.95 when Cardo Cruz visited the dealership;

    d. By failing to inform Cardo Cruz that on May 3, 2016, Premium Cars secured from Aventura Auto Tag Agency a transfer title and a permanent tag (Florida Tag No. GDCD01) under Cardo Cruz's name and later providing the tag to a person other than Cardo Cruz;

      e.    By failing to provide Cardo Cruz as a customer or purchaser with an odometer disclosure statement and a copy of any bona fide written, executed, sales agreement or agreement of purchase connected with the purchase of the Vehicle in violation of Florida Statutes Section 320.27(9)(b)4; and

      f.    By perpetrating any fraud upon Cardo Cruz regarding the sale of the Vehicle in violation of Florida Statutes Section 320.27(9)(b)13.

53. The violation of the Florida Motor Vehicle License Act is a per se violation of the FDUTPA pursuant to Florida Statutes Section 7501.211(3)(c).

54. As a direct and proximate result of the violation of the FDUTPA, Cardo Cruz has been damaged and is an aggrieved person under the FDUTPA.

55. As more particularly described above, Premium Cars has engaged in unfair methods of competition, unconscionable acts or practices and unfair and deceptive acts or practices in the conduct of trade or commerce in violation of Florida Statutes Section 501.204(1).

56. Cardo Cruz has retained the undersigned attorney to represent her interest in this matter and is obligated to pay said counsel a reasonable free for his services.

57. Cardo Cruz is entitled, pursuant to the FDUTPA, to recover her reasonable attorneys' fees and court costs upon entry of judgment in her favor.

## COUNT III
## FRAUD

58. Cardo Cruz re-alleges each and every allegation contained in paragraphs 1-29, as if they were fully set forth herein.

59. This is an action for a claim of damages for common law fraud.

60.     Premium Cars misrepresented and failed to disclose material facts concerning the price (specifically, performing a "bait and switch" by advertising a purchase price of $15,500, but selling the Vehicle for $19,023.95 when Cardo Cruz visited the dealership) and the condition of the Vehicle (specifically, the inaccurate odometer reading and the poor condition of the tires) and the existence of the permanent title for the Vehicle in Cardo Cruz's name, which was provided by Premium Cars to another individual.

61.     Premium Cars knew that the representations were false, or made such representations recklessly, when Premium Cars had no reasonable grounds for believing those representations to be true.

62.     Premium Cars knew the omissions concerning the Vehicle were materials and important.

63.     Premium Cars intended to deceive Cardo Cruz and she relied upon the misrepresentations and omissions to her detriment.

64.     As a direct and proximate result of the fraud and non-disclosure by Premium Cars, Cardo Cruz has been damaged.

### COUNT IV
### NEGLIGENT MISREPRESENTATION

65.     Cardo Cruz re-alleges each and every allegation contained in paragraphs 1-29, as if they were fully set forth herein.

66.     This is an action for a claim of damages for negligent misrepresentation.

67.     Premium Cars misrepresented and failed to disclose material facts concerning the price (specifically, performing a "bait and switch" by advertising a purchase price of $15,500, but selling the Vehicle for $19,023.95 when Cardo Cruz visited the dealership) and condition of the Vehicle (specifically, the inaccurate odometer reading and the poor condition of the tires) and the

existence of the permanent title for the Vehicle in Cardo Cruz's name, which was provided by Premium Cars to another individual.

68. Premium Cars believed the statements to be true, but which were in fact false.

69. Premium Cars was negligent in making the statements and Premium Cars should have known the statements were false.

70. Premium Cars, in making the statements, intended for Cardo Cruz to rely upon the statements.

71. Cardo Cruz justifiably relied on the false statements at the time of the purchase of the Vehicle.

72. As a direct and proximate result of the negligent misrepresentation by Premium Cars, Cardo Cruz has been damaged.

## **PRAYER FOR RELIER**

73. WHEREFORE, Cardo Cruz prays for judgment against Premium Cars as follows:

    a. For all damages available to Cardo Cruz under the law;

    b. For all applicable statutory damages available under federal and Florida law;

    c. For an award of attorneys' fees and costs (pertaining to Counts I and II);

    d. For pre-judgment interest and costs of the suit; and

    e. For such other relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

74. Cardo Cruz, pursuant to Federal Rule of Civil Procedure 38, demands a trial by jury in this action on all issues triable.

Dated: January 11, 2018.

                               Respectfully submitted,

                               s/ Michael L. Buckner
                               _____
                               Michael L. Buckner, Esquire
                               Florida Bar No. 106331
                               Email: mbuckner@bucknersportslaw.com
                               Michael L. Buckner Law Firm, P.A.
                               7771 West Oakland Park Boulevard, Suite 162
                               Sunrise, Florida 33351 USA
                               Telephone: +1-954-941-1944
                               Facsimile: +1-954-941-1946

                               Attorney for the Plaintiff,
                               Yazmin G. Cardo Cruz